56 P.3d 76

**Wesley A. DEMARCE, Petitioner,**

v.

**The Honorable Penny WILLRICH, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

State of Arizona, Real Party in Interest.

No. 1 CA–SA–02–0208.

Court of Appeals of Arizona, Division 1, Department E.

Oct. 29, 2002.

Jones, Skelton & Hochuli, P.L.C. by A. Melvin McDonald, Phoenix, Attorneys for Petitioner.

Richard M. Romley, Maricopa County Attorney by Gerald R. Grant, Phoenix, Attorneys for Real Party in Interest.

## OPINION

PATTERSON, Judge.

¶ 1 In this special action, petitioner Wesley A. Demarce challenges the respondent judge's order denying his request to withdraw from a term of lifetime probation and complete the prison sentence instead. Demarce contends that after five years on probation, imposed pursuant to a plea agreement, he has an "absolute right" to choose incarceration over probation because he finds

the conditions of his probation too onerous. For the reasons that follow, we accept jurisdiction but deny relief.

## FACTS

¶ 2 On January 27, 1997, a grand jury indicted Demarce for sexual assault, a class 2 felony, and sexual abuse, a class 5 felony. Pursuant to a negotiated agreement, Demarce pled guilty to the sexual abuse charge, which carried a presumptive term of one and one-half years in prison or an aggravated term of two years, and the state agreed to dismiss the sexual assault charge. The plea agreement contained a stipulation requiring "lifetime probation with an initial term of probation of no less than six (6) months flat in jail." A handwritten notation allowed for re-examination or modification of the probation term after seven years.[1] Demarce voluntarily signed this agreement, initialing each individual term and condition. On November 7, 1997, the sentencing judge ordered *inter alia* that Demarce be placed on lifetime probation, incarcerated for nine months as a term of probation, and subject to the special terms for a "sex offender."

¶ 3 On July 8, 2002, Demarce moved the court to either terminate his probation, amend the terms of probation to delete the sex offender terms, or revoke his probation and incarcerate him for a mitigated term. The request was predicated on his frustration with the sex offender supervision and classes. He complained that the adult probation department was "unfair and abusive" and stated that he "is fully prepared to go to prison to escape a program designed to perpetuate despair and frustrate meaningful rehabilitation."

¶ 4 The respondent judge denied the motion after considering the state's response, the probation officer's memorandum, test results, letters, the transcripts from the underlying cause of action, the parties' arguments, and the applicable law. Affirming the terms of probation, the court stated that "[t]o allow the Defendant to 'opt-out' of a Plea Agree-

---

1. At sentencing, the court did not specifically include the modification provision in the order. However, according to the order at issue in this special action, both parties acknowledged their willingness to honor this provision.

ment to life-time probation, in essence, would be a rejection of the Plea Agreement by the Court." Relying on a term in the agreement,[2] the court noted that the rejection would allow the state to withdraw from the agreement, which the state indicated it might do. The court further denied Demarce's motions for termination of probation and release from the sex offender terms, reasoning that the request was premature because the seven-year period had not expired. Moreover, after reviewing the submitted documents, the court questioned whether Demarce was as "successful and cooperative" on probation and in the sex offender treatment classes as he asserted. Demarce then filed this special action.

## SPECIAL ACTION JURISDICTION

¶ 5 The acceptance of jurisdiction in a special action is discretionary. *State ex rel. Romley v. Hutt*, 195 Ariz. 256, 259, ¶ 5, 987 P.2d 218, 221 (App.1999). Special action jurisdiction is proper when the party has no "plain, adequate, or speedy remedy by appeal." Ariz. R.P. Spec. Act. 1(a); *Luis A. v. Bayham–Lesselyong*, 197 Ariz. 451, 453, ¶ 2, 4 P.3d 994, 996 (App.2000). The court is more likely to accept special action jurisdiction when the issue is likely to arise again or is a pure question of law. *Vo v. Superior Court*, 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992).

¶ 6 Demarce does not have an adequate remedy by appeal because Arizona Revised Statute ("A.R.S.") section 13–4033(B) (2001) precludes direct appeals from sentences entered according to a plea agreement. Moreover, he does not allege any of the grounds provided in Rule 32.1 of the Arizona Rules of Criminal Procedure. *See Fisher v. Kaufman*, 201 Ariz. 500, 501–02, 38 P.3d 38, 39–40 (App.2001) (accepting special action jurisdiction because petitioner is precluded from a direct appeal and alleges no Rule 32.1 grounds).

¶ 7 This special action asks us to decide if a probationer has the right to elect incarceration rather than continue with a term of lifetime probation, which was imposed pursuant to a plea agreement and in accordance with sex offender terms. Demarce alleges that the respondent judge abused her discretion when she denied his request to withdraw from probation and be incarcerated subject to a mitigated sentence. Demarce argues that dictum appearing in *State v. Montgomery*, 115 Ariz. 583, 566 P.2d 1329 (1977), a case decided under the former criminal code, affords him this right. As this is purely a question of law, we accept special action jurisdiction. Moreover, as A.R.S. § 13–902(E) (2001), authorizes the imposition of lifetime probation for enumerated offenses, this issue is likely to arise again.

## DISCUSSION

¶ 8 *Montgomery* involved the appeal of a probation condition, which was imposed pursuant to a written plea agreement. 115 Ariz. at 583, 566 P.2d at 1329. The defendant pled guilty to the crime of second-degree burglary and received a four-year suspended sentence, on the condition that he serve eleven months in jail. *Id.* He challenged a condition of his probation that required him to submit to a warrantless search and seizure of his person or property at any time by any police or probation officer. *Id.* He contended that the condition was constitutionally overbroad and violated his Fourth Amendment rights. *Id.* The supreme court held that the condition was not constitutionally overbroad, reasoning in part that because the defendant was on probation, he had a lessened expectation of privacy. *Id.* at 584–85, 566 P.2d at 1330–31.

¶ 9 In discussing a trial court's ability to impose probation with its attendant terms and conditions, the supreme court relied on A.R.S. § 13–1657(A)(1),[3] which authorized a

---

**2.** The seventh term condition reads in part "[i]f after accepting this plea the court concludes that any of the plea agreement's provisions regarding the sentence or the term and conditions or probation are inappropriate, it can reject the plea. If the court decides to reject the plea agreement provisions regarding sentencing, it must give both the state and the Defendant an opportunity

to withdraw from the plea agreement. In case this plea agreement is withdrawn, all charges will automatically be reinstated."

**3.** "The court may suspend the imposing of sentence and may direct that the suspension continue for such period of time, not exceeding the maximum term of sentence which may be im-

suspended sentence not to exceed the maximum possible prison sentence, and parenthetically, which is no longer in effect. *Montgomery,* 115 Ariz. at 583–84, 566 P.2d at 1329–30. The supreme court emphasized that "probation is a form of punishment," and the court may impose conditions that are rehabilitative or punitive in nature. *Id.* at 584, 566 P.2d at 1330. It went on to say that "[t]he defendant, of course, may reject the terms of probation and ask to be incarcerated instead if he finds the terms and conditions of his probation unduly harsh." *Id.*

¶ 10 This dictum posited Montgomery's alternative to a suspended sentence under the statute then in effect. Either the sentence could be suspended for four years and Montgomery required to abide by the probationary terms and conditions during the suspension, or he could choose to be incarcerated for up to the maximum time allowed by the statute. The key to these alternatives is that pursuant to A.R.S. § 13–1657(A)(1), Montgomery's maximum probationary time could not exceed his maximum possible jail sentence. Where and how he chose to do the time was up to him.

¶ 11 The language in *Montgomery,* although cited and discussed in several cases and articles, has not become the basis for any subsequent Arizona statute or holding permitting a probationer to elect a potentially shorter incarceration sentence *after* finding the terms of his probation too onerous. For example, in *State v. Cummings,* 120 Ariz. 69, 71, 583 P.2d 1389, 1391 (App.1978), the court upheld a term of probation, that required the defendant to make restitution for a loss that occurred in a prior burglary. The court stated that "*[a]t that time,* the defendant had the right to object to the terms of probation and ask for a modification or to be incarcerated. *State v. Montgomery.* ... The defendant made no formal objection to the suspension of sentence and elected to abide by the terms of probation rather than take his chances with any other sentencing alternatives open to the trial court." *Id.* (emphasis

added); *see also State v. Harris,* 122 Ariz. 593, 594, 596 P.2d 731, 732 (App.1979) (noting that defendant made a bargain that was fulfilled and, relying on *Montgomery,* "[i]f he was unhappy with the length of the probation, he had the option of rejecting probation and requesting incarceration instead"); *State v. Davis,* 119 Ariz. 140, 142, 579 P.2d 1110, 1112 (App.1978) (citing *Montgomery* and noting that "[n]o objection to the condition of probation was made below"). *Cf.* Amy K. Posner, *Victim Impact Statements and Restitution: Making the Punishment Fit the Victim,* 50 Brooklyn L.R. 301, 313 (1984) (citing to *Montgomery* for the proposition that a defendant may object to harsh probation conditions or opt for incarceration).

¶ 12 More recently, this court cited *Montgomery* in *State v. Tousignant,* 202 Ariz. 270, 272, ¶ 7, 43 P.3d 218, 220 (App.2002). We addressed the issue of whether a defendant who violated his probation under Proposition 200 could choose to reject further probation. *Id.* at 271, 43 P.3d at 219. The *Tousignant* court held that he could not because A.R.S. § 13–901.01(E) (2001) mandates probation, and incarceration is not an option, unlike the alternatives in *Montgomery.* *Id.* at 272, 43 P.3d at 220. In so holding, this court overturned the lower court's decision to simply terminate the defendant's probation as unsuccessful and release him from custody, and by doing do, it limited the holding to the precise issue presented by the case. *Id.*

¶ 13 Demarce erroneously relies on *Montgomery* and *Tousignant* in support of his argument that he should be allowed to opt out of a negotiated plea agreement and its probationary conditions, and elect incarceration for a term equal to the statutory sentence less time served. Even if the dictum from *Montgomery* was the law, the statute under which it was decided was repealed in 1978. Probation is currently governed by A.R.S. § 13–901 *et seq.,* which now permits the imposition of lifetime probation for the conviction of a designated felony offense or

posed, and upon such terms and conditions as the court determines, and shall place such person on probation, under the charge and supervision of the probation officer of the court during such suspension." *Montgomery,* 115 Ariz. at

583–84, 566 P.2d at 1329–30 (quoting A.R.S. § 13–1657(A)(1) (Supp.1976) (repealed Oct. 1, 1978, as a result of the newly-adopted Arizona criminal code)).

an attempt to commit such offense as "the court believes is appropriate for the ends of justice." A.R.S. § 13–902(E) (2001).[4] No longer is probation, imposed in accordance with a suspended sentence, necessarily limited by the maximum possible prison term.

¶ 14 Additionally, the Arizona Rules of Criminal Procedure govern plea agreements. Rule 17.1(a) allows that the court *may* accept a plea of guilty. Rule 17.4(a) permits the parties to negotiate and agree on "any aspect of the case." Rule 17.4(d) provides that a "court shall not be bound by a provision in the plea agreement regarding the sentence or the term and conditions of probation to be imposed...." It is the court's purview to ensure that the "ends of justice and the protection of the public are being served by" a plea agreement. *State v. Superior Court,* 125 Ariz. 575, 577, 611 P.2d 928, 930 (1980); *State ex rel. Bowers v. Superior Court,* 173 Ariz. 34, 39, 839 P.2d 454, 459 (App.1992).

¶ 15 Thus, the trial court has both the discretion to impose lifetime probation and accept a plea agreement that includes a term of lifetime probation. *See State v. Lee,* 191 Ariz. 542, 544, 959 P.2d 799, 801 (1998) (noting that a judge is imbued with "wide latitude" to approve or reject a plea bargain). Demarce's interpretation of *Montgomery* would render A.R.S. § 13–902(E) potentially meaningless because it could allow a defendant, sentenced pursuant to a plea bargain, to unilaterally circumvent a term of lifetime probation in favor of a lesser incarceration sentence. Nonetheless, we are in accord with the fact that Demarce certainly had the option to reject the plea agreement at the outset and take his chances with whatever sentence the trial court wished to impose. *See Cummings,* 120 Ariz. at 71, 583 P.2d at 1391.

¶ 16 Demarce further suggests that the motion to revoke probation or, in the extreme, a probation violation will accomplish what the respondent judge refused to do, evidently believing that incarceration will automatically ensue. He appears to rely on the final term of his plea agreement, which subjects him to the original sentence (a presumptive term of one and one-half years) if he violates the conditions of his probation. The trial court has the power to modify or revoke probation. A.R.S. §§ 13–901 to –903; Ariz. R.Crim. P. 27. The ability of a judge to modify or revoke probation necessarily includes the power not to revoke probation.

¶ 17 Finally, we take heed of the fact that Demarce negotiated and signed a plea agreement clearly stating that after acceptance, the court could modify the terms of the agreement but that both parties must have the opportunity to withdraw if it did so. The agreement specified that if the plea was withdrawn, "all original charges will automatically be reinstated." Furthermore, Demarce waived any and all motions that could be asserted against the court's imposition of the sentence pursuant to the plea agreement. In essence, "plea agreements are contracts" and as such, may be "subject to contract interpretation." *Coy v. Fields,* 200 Ariz. 442, 445, ¶ 9, 27 P.3d 799, 802 (App.2001). "[A]ny dispute over the terms of the [plea] agreement will be determined by objective standards." *United States v. Sutton,* 794 F.2d 1415, 1423 (9th Cir.1986) (citing *United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1985)); *see also State v. Taylor,* 158 Ariz. 561, 563–64, 764 P.2d 46, 48–49 (App.1988).

¶ 18 For the foregoing reasons, we cannot say that the judge abused her discretion by refusing to allow withdrawal, termination, or amendment of Demarce's probation or its terms.

¶ 19 In conclusion, we find that a defendant, who is sentenced according to a plea agreement that includes lifetime probation, does not have a right to then reject the lifetime probation and, in its place, elect incarceration for a lesser term.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and G. MURRAY SNOW, Judge.

---

4. We note that Demarce pled guilty to sexual abuse, an offense under chapter 14 of the criminal code, and one that is subject to a term of statutory probation not less than that specified in A.R.S. § 13–902(A) "up to and including life." A.R.S. § 13–902(E).