IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

KEENAN REED-KALIHER,
*Petitioner*,

*v.*

HON. WALLACE R. HOGGATT, JUDGE OF THE SUPERIOR COURT OF THE
STATE OF ARIZONA, IN AND FOR THE COUNTY OF COCHISE,
*Respondent*,

*and*

THE STATE OF ARIZONA,
*Real Party in Interest.*

No. 2 CA-SA 2014-0015
Filed July 25, 2014

_____

Special Action Proceeding
Cochise County Cause No. CR201000683

**JURISDICTION ACCEPTED; RELIEF GRANTED**

_____

COUNSEL

Law Office of Thomas C. Holz, Bisbee
By Thomas C. Holz
*Counsel for Petitioner*

Edward G. Rheinheimer, Cochise County Attorney
By Brian M. McIntyre, Deputy County Attorney, Bisbee
*Counsel for State of Arizona*

Arizona Attorneys for Criminal Justice, Tucson
By David J. Euchner and Sarah L. Mayhew
*Counsel for Amicus Curiae Arizona Attorneys for Criminal Justice*

———————————————

**OPINION**

———————————————

Chief Judge Eckerstrom authored the opinion of the Court, in which Judge Kelly concurred and Judge Espinosa dissented.

———————————————

E C K E R S T R O M, Chief Judge:

**¶1**　　　In this special action, petitioner Keenan Reed-Kaliher challenges the respondent judge's denial of his motion to modify the conditions of his probation and allow him to use medical marijuana consistent with the Arizona Medical Marijuana Act (AMMA), A.R.S. §§ 36-2801 through 36-2819. For the reasons below, we accept special action jurisdiction and, because the respondent abused his discretion, we grant relief. *See* Ariz. R. P. Spec. Actions 3(c) (special action relief appropriate when decision constitutes abuse of discretion).

**Factual and Procedural Background**

**¶2**　　　Pursuant to a plea agreement, Reed-Kaliher was convicted of possession of marijuana for sale and attempted possession of a narcotic drug for sale. The respondent judge accepted a stipulation in the plea agreement pertaining to the sentences and sentenced Reed-Kaliher to a 1.5-year prison term on the possession for sale count and suspended the imposition of sentence on the attempt count, placing Reed-Kaliher on a three-year term of probation to "commenc[e] upon [his] absolute discharge from prison."

¶3 Reed-Kaliher was released from prison in June 2011 and began serving the probationary term. Among the conditions of probation set forth in the Uniform Conditions of Supervised Probation form that he signed was the requirement that he "[o]bey all laws" and "[n]ot possess or use illegal drugs, toxic vapors, or controlled substances, or use or possess any prescription drugs without a valid prescription."

¶4 He subsequently obtained a "registry identification card" from the Arizona Department of Health Services to allow him to use marijuana under the AMMA. In August 2013, his probation officer imposed an additional condition of probation, which was "deemed necessary to implement the conditions imposed by the Court, and [was] not inconsistent with them," specifically that he "not possess or use marijuana for any reason."

¶5 In December 2013, Reed-Kaliher filed a motion to modify the conditions of his probation, urging the respondent judge to "rescind[] the written implementation ordering him not to use marijuana, because he is licensed by the Arizona Department of Health Services to use marijuana pursuant to the [AMMA]." After a hearing on the motion, the judge denied Reed-Kaliher's motion. He concluded Reed-Kaliher had "agreed to accept the conditions of probation imposed" as part of his plea agreement and the additional condition therefore did not violate the AMMA. He further reasoned that probationers lose many other rights provided to other citizens because of their probationary status. Reed-Kaliher thereafter sought special action relief in this court.

**Jurisdiction**

¶6 We accept special action jurisdiction in this matter for several reasons. The issue presented here "involves a pure question of law in a matter of first impression[,]" and one of statewide importance. *State v. Fields*, 232 Ariz. 265, ¶ 6, 304 P.3d 1088, 1090 (App. 2013); *Trebesch v. Superior Court*, 175 Ariz. 284, 286-87, 855 P.2d 798, 800-01 (App. 1993); *see also* Ariz. R. P. Spec. Actions 1(a). Furthermore, Reed-Kaliher has no adequate remedy by appeal, as the denial of a motion to modify the terms of probation is not an

appealable order.  *See State v. Jimenez*, 188 Ariz. 342, 344-45, 935 P.2d 920, 922-23 (App. 1996); *see also* A.R.S. § 13-4033.

**Discussion**

¶7        Arizona voters passed the AMMA in 2010, adding a chapter to Title 36 establishing the conditions under which marijuana may be used medicinally.  *State v. Okun*, 231 Ariz. 462, ¶ 4, 296 P.3d 998, 1000 (App. 2013); *see also* §§ 36-2801 through 36-2804.02.  Upon the certification by a qualifying physician that a patient "is likely to receive therapeutic or palliative benefit . . . [for a] debilitating medical condition," § 36-2801(18), the AMMA allows such a patient to obtain a registry identification card and thereby possess and use limited amounts of marijuana for medicinal purposes.  *Okun*, 231 Ariz. 462, ¶ 5, 296 P.3d at 1000; *see also* § 36-2804.02.  Under § 36-2811, cardholders receive "two different statutory protections": a rebuttable presumption that the holder's possession or use of marijuana is for medical purposes if it is consistent with the AMMA's requirements and an immunity from state prosecution for medical use of marijuana so long as the cardholder possesses a lawful amount.  *Fields*, 232 Ariz. 265, ¶¶ 13-14, 304 P.3d at 1092.

¶8        The statutory immunity set forth in § 36-2811(B)(1) provides that a "registered qualifying patient . . . is not subject to arrest, prosecution or penalty in any manner, or denial of any right or privilege, including any civil penalty or disciplinary action by a court or occupational or professional licensing board or bureau" for the patient's "medical use of marijuana pursuant to" the AMMA.  The protections of the AMMA do not apply, however, under circumstances specified in § 36-2802, including medical use of marijuana in a correctional facility or in a public place.

¶9        Relying on the plain language of this statutory immunity, Reed-Kaliher maintains the respondent judge erred in denying his motion to modify the terms of his probation.  He maintains that the AMMA prohibits a court from denying a person any privilege based on his medical use of marijuana and that probation is such a privilege.  Therefore, he contends he could not be barred from such use as a condition of probation.

¶10 We review a trial court's imposition of conditions of probation for an abuse of discretion and generally will not reverse its imposition of conditions unless the terms "violate fundamental rights or bear no reasonable relationship whatever to the purpose of probation over incarceration." *State v. Turner*, 142 Ariz. 138, 144, 688 P.2d 1030, 1036 (App. 1984). But, because probation is a matter of "legislative grace," a "court's power with respect to probation is purely statutory." *State v. Levasseur*, 118 Ariz. 597, 598, 578 P.2d 1026, 1027 (App. 1978), *disapproved on other grounds by State v. Mendivil*, 121 Ariz. 600, 592 P.2d 1256 (1979); *see also Green v. Superior Court*, 132 Ariz. 468, 471, 647 P.2d 166, 169 (1982). A court abuses its discretion when it makes an error of law. *Tobin v. Rea*, 231 Ariz. 189, ¶ 14, 291 P.3d 983, 988 (2013).

¶11 The validity of the conditions prohibiting Reed-Kaliher from possessing or using marijuana for any reason turns on the interpretation of the immunity provision in the AMMA. "Our primary objective in construing statutes adopted by initiative is to give effect to the intent of the electorate." *State v. Gomez*, 212 Ariz. 55, ¶ 11, 127 P.3d 873, 875 (2006). "When the language [of the initiative] is 'clear and unambiguous,' and thus subject to only one reasonable meaning, we [construe it] by applying the language without using other means of statutory construction." *Id.*, *quoting Calik v. Kongable*, 195 Ariz. 496, ¶ 10, 990 P.2d 1055, 1057 (1999).

¶12 The clear language of the AMMA limits a judge's authority to prohibit a probationer such as Reed-Kaliher from using marijuana, so long as his use is consistent with the AMMA. Reed-Kaliher was eligible for probation on his attempted possession for sale conviction. *See* A.R.S. § 13-3408(A)(2), (D). The AMMA's immunity provision states that a cardholder may not be denied a right or privilege based solely on the protected use or possession of marijuana in compliance with the AMMA. § 36-2811(B). Thus, under the express terms of the immunity provision, Reed-Kaliher could not be deprived of the privilege of probation solely based on his medical use of marijuana, and a condition of probation threatening to revoke his privilege for such use cannot be enforced

lawfully and is invalid.[1] *See State v. Nelson*, 195 P.3d 826, ¶ 27 (Mont. 2008) (concluding Montana's medical marijuana act, with essentially the same language as Arizona's, prohibited condition of probation limiting medical marijuana use).

¶13　　　Here, the respondent judge determined that Arizona's Uniform Conditions of Supervised Probation, § 6-207 of the Arizona Code of Judicial Administration and Appendix A thereto, required him to order Reed-Kaliher to "obey all laws" as a condition of probation. The respondent concluded further that this condition prohibited Reed-Kaliher from violating federal laws prohibiting marijuana use, notwithstanding the provisions of the AMMA. We cannot agree with the respondent's conclusion.

¶14　　　One of the conditions set forth in Appendix A as a uniform condition of supervised probation is that a probationer "maintain a crime-free lifestyle by obeying all laws, and not engaging or participating in any criminal activity." Ariz. Code of Jud. Admin. § 6-207 app. A. The AMMA, however, has exempted a limited use of marijuana for medical purposes from the usual unlawful status of marijuana use and created a shield against state action for such use. *See* § 36-2811(B). As a threshold matter, then, a probationer violates no state law nor participates in any state criminal activity by using marijuana in conformity with the AMMA. Although federal law prohibits the use of marijuana—and Reed-Kaliher may be subject to federal prosecution or punishment on that basis—the AMMA prohibits the State of Arizona and any court of this state from depriving him of the privilege of probation as a consequence of his protected use of marijuana. Indeed, the respondent judge characterized his ruling here as enforcement of state rather than federal law, correctly observing that "[f]ederal authorities are perfectly able to enforce the United States Code without the assistance of this court."

---

[1] The revocation of a cardholder's probation based on the medical use of marijuana could not be achieved without subjecting him to "arrest" and a "penalty." § 36-2811(B). The express language of the AMMA likewise forbids state actors from taking such steps.

¶15 In a similar vein, the state argues that the Supremacy Clause of the United States Constitution requires a state court to prohibit marijuana use that is in violation of federal law. The state does not expressly contend the AMMA is preempted by federal law. Rather, the state asserts it would violate the respondent judge's "oath of office and duty" under the Supremacy Clause to "sanction" the use of marijuana in violation of federal drug laws. But we cannot see how a state court's fidelity to state law in a state prosecution under a state criminal code and subject to state rules setting forth probation conditions could violate the Supremacy Clause unless any of the state laws in question are preempted by federal law. To address the state's argument, we therefore must consider whether the AMMA is preempted by federal law.

> State law is preempted by federal law in three instances: (1) express preemption, when Congress explicitly defines the extent to which an enactment preempts state law; (2) field or implied preemption, when state law regulates conduct in a field Congress intended the federal government to occupy exclusively; and (3) conflict preemption, when state law actually conflicts with federal law.

*Hutto v. Francisco*, 210 Ariz. 88, ¶ 7, 107 P.3d 934, 936 (App. 2005).

¶16 "The structure and limitations of federalism . . . allow the States 'great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.'" *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006), *quoting Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). Thus, we must presume that "the historic police powers of the States [are] not to be superseded by" federal law "unless that [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992), *quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (alterations in *Cipollone*).

¶17 In the case of the federal Controlled Substances Act, Congress not only declined to state it was preempting state law, but

it expressly provided, "No provision of [the subchapter on control and enforcement] shall be construed as indicating an intent on the part of the Congress to occupy the field . . . to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision . . . and that State law so that the two cannot consistently stand together." 21 U.S.C. § 903. Such an "[a]ctual conflict occurs when it is impossible to comply with both state and federal law 'or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Hernandez-Gomez v. Volkswagen of Am., Inc.*, 201 Ariz. 141, ¶ 3, 32 P.3d 424, 425-26 (App. 2001), *quoting Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).

**¶18** The AMMA does not create such a conflict with federal drug laws because it does not purport to make the use of marijuana lawful under federal law, but rather, as described above, it creates a state statutory immunity that protects a cardholder from state penalty for the qualifying use of marijuana under the AMMA. Thus, although the AMMA protects a person from being penalized or deprived of a benefit under state law for the medical use of marijuana under specified circumstances, it does not purport to affect federal law or the power of federal law enforcement agencies or courts to enforce that law.[2] *See* Initiative Measure, Prop. 203, § 2(F) (2010) ("States are not required to enforce federal law or prosecute people for engaging in activities prohibited by federal law. Therefore, compliance with this act does not put the state of Arizona in violation of federal law."), *available in* Historical and

---

[2]Furthermore, the federal government has made clear that it does not currently intend to occupy the area of state medical marijuana law. As this court noted in *Polk v. Hancock*, 680 Ariz. Adv. Rep. 29, n.7 (Ct. App. Feb. 18, 2014), an August 2013 memorandum from the United States Department of Justice to the United States Attorneys explained, inter alia, that "'enforcement of state law by state and local law enforcement and regulatory bodies should remain the primary means of addressing marijuana-related activity.'"

Statutory Notes to A.R.S. § 36-2801 *et seq.*; *see also Nelson*, 195 P.3d 826, ¶ 37.

**¶19**　　　To the extent the state suggests that the respondent judge nonetheless acquired a duty to enforce federal laws by taking his oath of office, we do not understand that ritual as altering the traditional jurisdictional boundaries between state and federal courts. Nor can the oath be read as imposing any new duty on state court judges to exercise and enforce federal regulations, a duty belonging properly to federal officials in federal courts. *See New York v. United States*, 505 U.S. 144, 161 (1992) (federal law cannot compel state to "'enact and enforce a federal regulatory program'"), *quoting Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 288 (1981); *see also Printz v. United States*, 521 U.S. 898, 935 (1997).

**¶20**　　　In support of his ruling, the respondent judge also maintained Reed-Kaliher had waived any protection under the AMMA by pleading guilty and accepting probation. Citing *State v. Montgomery*, 115 Ariz. 583, 566 P.2d 1329 (1977), the respondent concluded that if Reed-Kaliher did not agree to comply with the condition of probation prohibiting him from marijuana use, he could have rejected probation.

**¶21**　　　In *Demarce v. Willrich*, however, this court noted that the language on which the respondent judge here relied was dicta and had "not become the basis for any subsequent Arizona statute or holding permitting a probationer to elect a potentially shorter incarceration sentence *after* finding the terms of his probation too onerous." 203 Ariz. 502, ¶ 11, 56 P.3d 76, 79 (App. 2002). We observed that the statute addressed in *Montgomery* was repealed in 1978. 203 Ariz. 502, ¶ 13, 56 P.3d at 79. We concluded, contrary to the dicta in *Montgomery*, "that a defendant, who is sentenced according to a plea agreement that includes lifetime probation, does not have a right to then reject the lifetime probation and . . . elect incarceration for a lesser term." 203 Ariz. 502, ¶ 19, 56 P.3d at 80. Thus, we do not agree that Reed-Kaliher had the unilateral right to refuse probation if he found any condition of probation imposed unacceptable.

¶22　　Nor can we say that Reed-Kaliher waived the protection afforded by the AMMA for the medical use of marijuana by pleading guilty and accepting a term of probation at the outset. Assuming arguendo the state could condition a plea agreement on a defendant's waiver of the protections of the AMMA without running afoul of that act,[3] Reed-Kaliher could not have intended to relinquish those protections here because the AMMA did not exist at the time he entered his plea. Therefore, Reed-Kaliher neither knew of his future rights under the AMMA nor intentionally relinquished them. *See State v. Williams*, 128 Ariz. 415, 416, 626 P.2d 145, 146 (App. 1981) (concluding defendant had not waived statutory right to credit for presentence incarceration when "the record disclose[d] nothing from which it c[ould] be inferred that [defendant] knew of his statutory right . . . and intentionally relinquished it"); *see also Black's Law Dictionary* 1717 (9th ed. 2009) (explaining "[t]he party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it").

¶23　　The state further asserts that the respondent judge properly restricted Reed-Kaliher's marijuana use because such a condition of probation was reasonable. Quoting *United States v. Knights*, the state correctly points out that many other conditions of probation "'deprive the offender of some freedoms enjoyed by law-abiding citizens.'" 534 U.S. 112, 119 (2001). In his ruling, the respondent reached a similar conclusion, stating that a person may be "required to give up" "legal, even constitutional, rights," including the right to assemble, drink alcohol, or to be free from warrantless searches, "in order to be placed on probation." Yet no Arizona statute expressly prohibits the state from conditioning the

---

[3]The language of § 36-2811(B), which prohibits any state actor from "den[ying] . . . any right or privilege" to a "registered qualifying patient," would appear to prevent state actors from conditioning any state benefit on the waiver of AMMA rights. If such a practice were permitted, state officials could so burden the exercise of the statutory right as to make it illusory—whether by requiring such a waiver to secure a driver's license, business license, professional accreditation, or an educational degree from a state institution.

privilege of probation on the waiver of those rights. By contrast, the voters adopted language in the AMMA that expressly prohibits state actors from depriving persons of "any . . . privilege" based on the medical use of marijuana in conformity with the act. § 36-2811(B).

**¶24** Thus, although we agree that our trial courts generally may prohibit the use of marijuana as a reasonable condition of probation, the AMMA contains no language allowing state officials to override the act or to otherwise prevent a person from using marijuana in conformity with the law. Because the plain language of the AMMA prohibits our state trial courts from disregarding the terms of the act, the respondent judge abused his discretion in concluding the prohibition on the use of medical marijuana was a "lawful and appropriate" condition.

**¶25** We recognize the respondent judge's motivation in concluding that Reed-Kaliher should be prohibited from using marijuana on probation. As the respondent specifically found, Reed-Kaliher has been convicted of an offense involving marijuana, and his record suggests a long history of drug abuse. We acknowledge that public policy concerns are raised by allowing probationers with a history of substance abuse to continue to use marijuana for any purpose. But, as the Arizona Constitution makes clear, the power to debate and resolve questions of public policy is exclusively a legislative one. *See Seisinger v. Siebel*, 220 Ariz. 85, ¶ 26, 203 P.3d 483, 490 (2009). The people of Arizona may exercise legislative authority through initiative and referendum. They have done so here. Our task is to apply the law they have written, not to second-guess the wisdom of their determinations.[4]

---

[4]Although the parties do not address it, § 13-3408(G) requires that a person convicted of a drug offense under that section who is placed on probation be subject to a condition of probation barring his use of "marijuana, dangerous drug[s], narcotic drug[s] or prescription-only drug[s] except as lawfully administered by a health care practitioner." Reed-Kaliher's term of probation, however, arose from his conviction for an *attempted* violation of § 13-3408(A)(2), and the state has not argued or established that the requirement set forth in § 13-3408(G) applied to his term of

**Response to the Dissent**

¶26        Our dissenting colleague emphasizes that Reed-Kaliher stipulated to a term of probation as part of his plea bargain with the state and therefore implicitly agreed to be bound by the uniform conditions of supervised probation, which included a condition that he obey all laws, even federal ones.   In the dissent's view, the respondent judge did nothing more than enforce Reed-Kaliher's own agreement by rejecting his motion.   We agree that this is one logical construction of what occurred.   However, a condition of probation is unenforceable, notwithstanding a defendant's agreement to it, if that condition violates our state's public policy. *See State v. Rutherford*, 154 Ariz. 486, 489 n.1, 744 P.2d 13, 16 n.1 (App. 1987); *State v. Smith*, 129 Ariz. 28, 30, 628 P.2d 65, 67 (App. 1981); *accord People v. Avery*, 650 N.E.2d 384, 386 (N.Y. 1995); *State v. Brown*, 326 S.E.2d 410, 411 (S.C. 1985) (per curiam); *State v. Barnett*, 3 A.2d 521, 526 (Vt. 1939).  This public policy is expressed most clearly by our state constitution and laws.  *See Brown*, 326 S.E.2d at 412.

¶27        In *State v. Sheehan*, for example, we concluded the condition of probation that a defendant "obey all laws" necessarily excluded civil traffic offenses, based on the public policy reflected by the decriminalization of such offenses.  167 Ariz. 370, 372, 807 P.2d 538, 540 (App. 1991).   Similarly, in *State v. Lynch*, we held a defendant's probation could not be revoked due to adultery in contravention of the public policy expressed by our then-existing criminal statute, which prohibited adverse state action in the absence of a spouse's complaint.  115 Ariz. 19, 24, 562 P.2d 1386, 1391 (App. 1977).

---

probation.  *Cf. State v. Wise*, 164 Ariz. 574, 578, 795 P.2d 217, 221 (App. 1990) (concluding fine mandated by § 13-3408(E) not applicable to those convicted of attempt); *cf. also State v. Peek*, 219 Ariz. 182, ¶ 15, 195 P.3d 641, 643 (2008) (citing *Wise* with approval). Notably, this statute does not necessarily conflict with the public policy expressed by the AMMA, as it indicates a general intent to allow probationers to use at least some otherwise unlawful substances "as lawfully administered by a health care practitioner." § 13-3408(G).

¶28 We cannot overlook that probation is purely a legislative creation. *See State v. Lewis*, 226 Ariz. 124, ¶ 8, 244 P.3d 561, 563 (2011). Therefore, "[a] condition of probation may not circumvent another statutory scheme." *United States v. Abushaar*, 761 F.2d 954, 960 (3d Cir. 1985); *see State v. Hylton*, 202 Ariz. 325, ¶ 3, 44 P.3d 1005 (App. 2002) ("[A] court's probation order 'must conform to the statutory authorization.'"), *quoting State v. Hensley*, 201 Ariz. 74, ¶ 21, 31 P.3d 848, 853 (App. 2001). Thus, while we may otherwise allow a probationer's rights or privileges to be curtailed by conditions that are deemed reasonable, *see Montgomery*, 115 Ariz. at 584, 566 P.2d at 1330, we cannot do so when "the law in Arizona," as here, prohibits the imposition of a particular condition. *Id.* at 585, 566 P.2d at 1331.

¶29 The dissent posits, however, that the AMMA expresses no clear intent to override either the uniform conditions or a particular state statute requiring similar probation conditions for narcotic-drug offenders, § 13-3408(G). The dissent correctly observes that we must presumptively attempt to harmonize newer statutes with previous ones and that we disfavor repeal by implication. *See infra* ¶ 38. But we cannot agree that the AMMA is silent on whether a person may be denied the privilege of probation for using marijuana in conformity with the AMMA. As discussed above, the AMMA announces a new public policy that forbids the state from denying a cardholder "any . . . privilege" based on his use of medical marijuana. § 36-2811(B).

¶30 Nor does any other language in the AMMA suggest that the voters either silently intended to exempt probationers from the benefits of the law, or failed to consider whether to do so. To the contrary, the AMMA comprehensively contemplates and addresses the potential friction points between its goals and those of law enforcement.[5] It provides exclusions for people convicted of certain

---

[5] For example, the AMMA prohibits the prosecution or penalization of physicians who certify patients for medical use of marijuana and caretakers who assist a patient in administering medical marijuana. § 36-2811(B), (C). It provides a presumption that individuals are using and possessing medical marijuana

felony offenses set forth in § 36-2801(7). *See* §§ 36-2801(5)(c) (designated caregivers), 36-2804.01(D) (nonprofit dispensary agents). And, it specifically itemizes those circumstances when the medical use of marijuana is prohibited, such as in public, on school buses and grounds, while operating any motor vehicle, and in correctional facilities. § 36-2802. Thus, although the AMMA excludes prisoners and certain felons from some of its benefits, it provides no similar exemption for probationers.

¶31 In sum, the AMMA is a comprehensive scheme that allows state officials to prohibit a person from "[u]sing marijuana except as authorized under" the act. § 36-2802(E). The canon of construction *expressio unius est exclusio alterius* applies with particular force in this context, given that Arizona voters were well aware marijuana would remain criminalized except as specifically provided in the AMMA. Against this backdrop, it is therefore clear that neither state prosecutors nor judges may read exceptions into the law where none exist, thereby contravening the plain terms of the AMMA and usurping the legislative authority exercised by, and ultimately reserved for, the people.[6]

**Disposition**

¶32 For the reasons stated in this opinion, we accept jurisdiction of this special action and grant relief.

---

lawfully if they possess a registry identification card and the quantity of marijuana in their possession does not exceed the allowable amount. § 36-2811(A). It specifies that law enforcement may not use the possession of, or application for, a registry identification card as evidence generating probable cause to arrest or as grounds to support a search warrant. § 36-2811(H).

[6]By concluding both that the AMMA announces a new public policy that places a substantive restriction on state actors and that the AMMA is comprehensive in contemplating potential exceptions to its reach, our decision conflicts with *Polk*, 680 Ariz. Adv. Rep. 29, ¶ 21, to the extent that case suggests the AMMA provides no blanket protection to cardholders.

ESPINOSA, Judge, dissenting:

¶33        I respectfully disagree with the majority's conclusion that the respondent judge erred in prohibiting Reed-Kaliher, a convicted narcotics trafficker and drug abuser, from possessing and using marijuana as a term of his probation, even in the face of the AMMA. And, on the latter point, because Reed-Kaliher stipulated to his probation, which included terms necessarily prohibiting marijuana use, there is no need to address, on these facts, either the question of whether the AMMA prevents a court from imposing a bar on medical marijuana use as a condition of probation, or the issue of federal preemption of state drug laws.

¶34        As noted in the recitation of the facts of this matter, the record shows Reed-Kaliher stipulated to probation in his plea agreement. In his ruling, the respondent judge pointed out that by agreeing to probation, Reed-Kaliher had consented to the uniform conditions of probation, set forth in § 6-207 of the Arizona Code of Judicial Administration. Those conditions expressly included "obeying all laws" and not using or possessing illegal drugs or controlled substances. Ariz. Code of Jud. Admin. § 6-207 app. A. And Reed-Kaliher further agreed to "[c]omply with any written directive of the [Adult Probation Department] to enforce compliance with the conditions of probation."

¶35        Reed-Kaliher argues, and the majority accepts, that he did not validly waive his rights under the AMMA. He maintains that because the AMMA, which had not yet been enacted, was not expressly addressed in his plea agreement or conditions of probation, his waiver was not "voluntary and intentional." A specific waiver of the protections provided by the AMMA, however, was not required for the respondent judge to prohibit Reed-Kaliher from using marijuana—he expressly agreed to obey all laws, including those governing controlled substances, and to comply with written directives to enforce compliance with those laws. As the respondent judge noted, at the time Reed-Kaliher was convicted, marijuana possession and use was, and continues to be, unlawful under federal law. See 21 U.S.C. §§ 841(a)(1), 844(a). And, "a state court may order as a condition of probation that [a] defendant comply with the law, federal, as well as state." State v. Marquez-Sosa,

15

161 Ariz. 500, 502, 779 P.2d 815, 817 (App. 1989), *citing State v. Camargo*, 112 Ariz. 50, 52, 537 P.2d 920, 922 (1975). Thus, there is no need to address whether the federal prohibition of marijuana possession and use would itself be a sufficient ground on which a trial court could prohibit a probationer from using marijuana under the AMMA; in this case, Reed-Kaliher expressly agreed to accept that restriction in order to gain the benefits of a plea bargain, and I see no basis for excluding the federal drug laws from that agreement. Furthermore, although my colleagues rely on *Demarce v. Willrich*, 203 Ariz. 502, 56 P.3d 76 (App. 2002), for the proposition that Reed-Kaliher did not have the right to refuse probation after he entered into the plea agreement, *see id. ¶* 19, I fail to see how this undermines his voluntary acceptance of the term prohibiting marijuana use. Reed-Kaliher knew what the plea agreement's terms required and, like Demarce, "certainly had the option to reject the plea agreement at the outset." *Id.* ¶ 15.

¶36         Nor do I agree that a public policy favoring the legal use of medicinal marijuana necessarily conflicts with a probation condition prohibiting such use. *See State v. Smith*, 129 Ariz. 28, 30-31, 628 P.2d 65, 67-68 (App. 1981) (public policy goal of preserving families not undermined by homestead waiver condition bearing reasonable nexus to probation goals).[7] Although my colleagues assert that the AMMA "expressly prohibits the state from conditioning the privilege of probation on the waiver of those rights," nothing in that Act specifically addresses a drug-offending

---

[7]Notably, both cases discussed in the majority's argument on this point involved a different inquiry from the one conducted here. In *State v. Sheehan*, this court evaluated whether a probation condition requiring defendant to "obey all laws" justified revocation based on a civil traffic violation. 167 Ariz. 370, 372, 807 P.2d 538, 540 (App. 1991). And *State v. Lynch* considered whether probation could be revoked based on adultery where the statutory requirements for prosecution of that crime had not been met. 115 Ariz. 19, 24, 562 P.2d 1386, 1391 (App. 1977). This case does not require us to determine what the relevant conditions in the probation agreement prohibited or whether they had been violated.

probationer's use of medical marijuana. I therefore cannot conclude that allowing a drug-offending defendant to agree not to use marijuana as a condition of his plea bargain runs afoul of the limited immunity provision of the AMMA. Indeed, this court has implicitly determined that the protections of the AMMA may be waived by plea agreement. *Polk v. Hancock*, 680 Ariz. Adv. Rep. 29, ¶¶ 25-26 (Ct. App. Feb. 18, 2014) (trial judge erred in striking stipulated probation condition prohibiting medicinal marijuana use). That the AMMA does not specifically exclude probationers from its protections simply has no bearing on a convicted felon's decision to voluntarily enter into an agreement whereby he may avoid additional incarceration by agreeing to abide by specified laws and restrictions.

¶37 Accordingly, because Reed-Kaliher stipulated to a term of probation that included restrictions against marijuana, the question remains one of reasonableness. That standard has been applied to other probation requirements as well. *See State v. Kessler*, 199 Ariz. 83, ¶ 21, 13 P.3d 1200, 1205 (App. 2000). In determining whether a probation condition is permissible, the test "'is whether there is a reasonable nexus between the conditions imposed and the goals to be achieved by the probation.'" *Id.*, *quoting State v. Davis*, 119 Ariz. 140, 142, 579 P.2d 1110, 1112 (App. 1978); *cf. Polk*, 680 Ariz. Adv. Rep. 29, ¶¶ 25-26 (requiring individualized determination of whether medical marijuana prohibition was reasonable term of probation). Here, the condition of probation restricting Reed-Kaliher from possessing or using marijuana is directly related to his criminal offenses. He pled guilty to attempted possession of a narcotic drug for sale and possession of marijuana for sale. As the trial court noted, and the majority concedes, he also has a long history of drug abuse. Such a condition is therefore relevant to his offenses and is reasonably related to Reed-Kaliher's rehabilitation and protection of the public from additional criminal offenses. *See Kessler*, 199 Ariz. 83, ¶ 21, 13 P.3d at 1205. The close relationship between Reed-Kaliher's crimes and the challenged condition also highlights a potential policy problem created by the majority's position: prosecutors and courts unable to prohibit marijuana use may be much less likely to offer or approve plea agreements in many cases.

¶38        Finally, although the Act could have expressly excluded probationers from its protection, as my colleagues point out, I cannot accept its silence on this critical point as signifying the voters' intent to allow a convicted drug trafficker and drug abuser to continue using marijuana while on probation, even within the purview of the AMMA.  This is particularly so in light of A.R.S. § 13-3408(G), which requires defendants convicted of enumerated drug offenses and placed on probation to be "prohibited from using any marijuana."  And "[t]he law does not favor construing a statute as repealing an earlier one by implication.  Rather, whenever possible, this court interprets two apparently conflicting statutes in a way that harmonizes them and gives rational meaning to both." *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 249, 866 P.2d 1330, 1335 (1994) (citations omitted).  In this circumstance, we could give meaning to both the AMMA and the more specific drug-sentencing statutes by interpreting the AMMA's silence as to probationers to signal its assent to the long-standing limitations on drug use by those convicted of drug-related offenses—an interpretation that also would avoid the anomalous result reached by the majority today.

¶39        In any event, because Reed-Kaliher validly agreed to conditions of probation that prohibit him from using marijuana, it is not necessary to resolve questions of statutory interpretation here.  I would therefore affirm the respondent judge's legitimate and sensible restriction of Reed-Kaliher's marijuana use pursuant to his plea agreement, and deny relief on the petition for special action.